IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DONNA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10-cv-202-MEF |
| | ) | |
| GREG WARD, *et al.*, | ) | (WO- DO NOT PUBLISH) |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Donna Jones ("Jones") filed this lawsuit against the following eight defendants, all employees or entities of Geneva County, Alabama: Greg Ward ("Ward") in his individual and official capacity as Geneva County Sheriff, Fred Hamic ("Hamic") in his individual and official capacity as Probate Judge of Geneva County, Kirke Adams ("Adams") in his individual and official capacity as District Attorney for the 33rd Judicial Circuit, Stephen Smith ("Smith") in his individual and official capacity as Assistant District Attorney for the 33rd Judicial Circuit, Hazel Odom ("Odom") in her individual and official capacity as Geneva County Personnel Director, Ray Minshew ("Minshew") in his individual and official capacity as Geneva Count Commissioner, Geneva County Commission ("Commission"), and Geneva County Personnel Board ("Personnel Board" or "Board").  (Doc. # 1).

Defendants Adams and Smith have answered Jones's complaint.[1]  (Doc. # 15). Odom and the Personnel Board (Doc. # 16); Minshew, the Commission, and Hamic (Doc. # 18); and Ward (Doc. # 20) have all filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), seeking to dismiss the claims brought against them.  These motions are now pending before this Court.  For the foregoing reasons, each motion is GRANTED in part and DENIED in part.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 1367 (supplemental).  The parties do not assert that this Court lacks personal jurisdiction over them, and there is no dispute that venue is proper pursuant to 28 U.S.C. § 1391(b).

## III. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  Therefore, for the purposes of adjudging a Rule 12(b)(6) motion to dismiss, the court will accept as true all well-pleaded factual allegations and view them in the light most favorable to the plaintiff.  *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).

---

[1]  While Jones names both Adams and Smith in the caption of her complaint, it does not appear that any claims have actually been brought against them.  Jones sets out at the start of each count which defendants the count is brought against.  The Court cannot discern any count which purports to be brought against either Adams or Smith.

2

While  Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," as a general matter, to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559.  It is not sufficient that the pleadings merely leave "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.*  at 561 (internal quotation and alteration omitted).

All of the defendants who filed motions to dismiss submitted evidentiary materials in support of their motions.  On response, Jones also submitted evidentiary materials in opposition to the motions.  The parties are reminded that on a 12(b)(6) motion, the court must either exclude any matters outside the pleadings or treat the motions as made pursuant to Fed. R. Civ. P. 56.  Fed. R. Civ. P. 12(d).  The Court does not wish to convert these three motions into motions for summary judgment, and therefore will exclude from its review all matters outside the pleadings.

## IV. FACTUAL AND PROCEDURAL BACKGROUND

Jones began working for Geneva County in 1979 as an assistant in the Commission office. (Doc. # 1 ¶ 11). In 1990, she was promoted to the position of Geneva County Administrator in the Commission office. *Id.* ¶ 12. Throughout her employment, Jones had been paid on an hourly basis. Id. ¶ 12–12. However, on March 10, 2008, the Commission voted to recommend that Jones's employment status be changed from classified (paid on an hourly basis) to exempt (paid on a salaried basis). *Id.* ¶ 16, 18.

Section 2 of Alabama Act No. 85-587 provides that "[a]ll offices and positions of Geneva County shall be divided into the exempt service and the classified service."[2] Exempt service includes six categories of positions: "(a) the positions of all elected officials of Geneva County; (b) the positions of voluntary personnel and personnel appointed to serve without pay; (c) the positions of consultants rendering temporary professional service; (d) all positions involving seasonal or part-time employment; (e) the positions of attorneys rendering legal service; . . . (f) employees not paid exclusively by Geneva County." Ala. Act. No. 85-587. The Act gives the Personnel Board the power to "remove any position from the classified service and place it in the exempt service." *Id.*

---

[2] According to the complaint, the Geneva County Personnel Handbook ("the Handbook") states that classified service employees are paid on an hourly basis. (Doc. # 1 ¶ 16). Exempt employees, however, are exempt from overtime requirements and are paid a set salary. *See id.* ¶ 78. Pursuant to the Handbook, classified employees are also entitled to file a grievance about adverse employment actions. *Id.* The Handbook is not part of the record at this time.

Jones asserts that she did not fall into any of the above categories during any point in her employment with Geneva County.  (Doc. # 1 ¶ 20).

During the Commissioners' meeting on March 10, 2008, Ward publicly asked the Commissioners whether the Commission had authorized one of Jones's time sheets.  *Id.* ¶ 22.  He then announced that he would be conducting a criminal investigation into Jones's time sheets.  *Id.* ¶ 26.  When Jones asked why Ward was considering a criminal investigation, Ward told her that if he answered that question, he would have to read Jones her rights.  *Id.* ¶ 28.  Commissioner Minshew did not "go into executive session" to prevent the statements regarding Jones's character from becoming public.  *Id.* ¶ 30.  Jones also seems to allege that Minshew personally made public comments regarding her character at the March 10, 2008 meeting, although she does not allege the content of those statements.  *Id.*

On March 12, 2008, the Personnel Board held a meeting to change Jones's employment status from classified to exempt, pursuant to the Commission's March 10, 2008 recommendation.  *Id.* ¶ 40.  Jones attended the meeting and answered questions about the change in her status.  *Id.*  She was not given prior notice of the meeting and was not able to retain counsel to represent her at the meeting.  *Id.* ¶ 35–36.  On March 27, 2008, Adams indicted Jones for allegedly using her position as County Administrator for

5

personal gain.  *Id.* ¶ 45.  A day later, Judge Hamic dismissed Jones from her position.[3]  *Id.* ¶ 64.

The charges Adams brought against Jones were based on allegations that Jones had miscalculated her overtime, holiday, and sick leave pay.  On July 28, 2008, the State of Alabama Department of Examiners of Public Accountants conducted an audit of Jones's payroll records going back to 2005.  *Id.* ¶ 46.  The audit revealed that Jones had been overpaid a total of $1,000.78, $712.62 of which was based on errors "made by someone other than Jones after Jones's termination and indictment."  *Id.* ¶ 48.  The audit also revealed that Jones had been overpaid $288.16 due to mistakes she made regarding monthly vacation and sick leave.  *Id.*  On June 19, 2009, Adams moved to dismiss the indictment against Jones.

On August 24, 2009, the Geneva County Commissioners met to discuss whether Jones should be reinstated as County Administrator.  *Id.* ¶ 99. During this meeting, Minshew said to Geneva County Commissioner Larry Everett that "[s]he might be your friend, but I don't want her back down here."  *Id.*  Jones believes that Minshew was referring to her and expressing his opinion that Jones should not be rehired.

Jones alleges that this entire ordeal was brought about because Ward and Hamic

---

[3]  In April 2007, the Commission passed a resolution transferring its appointment authority over Jones to Hamic.  Therefore, at the time that Hamic fired Jones, Hamic was Jones's appointing authority.  *Id.* ¶ 63–64.  According to Section 17 of Alabama Act No. 85-587, any Geneva County employee "may be dismissed, suspended without pay, or demoted by his appointing authority."

had personal vendettas against her.  *See id.* ¶ 44, 51, 56.  She also alleges that Hamic ran for election as probate judge—with Ward's support—based on a platform that included the promise to fire Jones if elected.  *Id.* ¶ 57–59, 62.

Seeking redress for "pain, humiliation, mental anguish and suffering, and loss of enjoyment of life", Jones filed this complaint.  She alleges seven counts, including:

(1)    Misclassification as an exempt employee in violation of the Fair Labor Standards Act § 216(b) and retaliation in violation of the Fair Labor Standards Act § 215(a)(3);

(2)    Violation of substantive and procedural due process rights protected by the Fourteenth Amendment, brought through 42 U.S.C. § 1983;

(3)    Violation of political association rights protected by the First Amendment and retaliation for exercising those rights;

(4)    Defamation, including libel and slander, pursuant to Alabama Code § 6-5-182 (1975);

(5)    Malicious prosecution in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983;

(6)    Abuse of process in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983; and

(7)    Violation of rights secured through the Geneva County Civil Service Act, Alabama Act No. 85-587.

Jones seeks injunctive relief , payment for lost wages, reinstatement to her position as County Administrator, expungement of her criminal record, a declaratory judgment, liquidated, nominal, compensatory, and punitive damages, attorney's fees and costs, and all other legal or equitable remedies available at Alabama law.

Three different Motions to Dismiss have been filed—one by the Personnel Board and Odom (Doc. # 16), one by Hamic, Minshew, and the Commission (Doc. # 18), and one by Ward (Doc. # 20). Portions of these motions are almost identical, and therefore the Court will render one opinion on all three.

## V. DISCUSSION

**A. *Defendants' argument that Jones is estopped from bringing any claims based on her termination.***

All three motions to dismiss argue that the Department of Industrial Relations established in its decision regarding Jones's unemployment compensation that Jones was fired because of "a dishonest act connected with [her] work." (Doc. # 16 at 4; Doc. # 18 at 6; Doc. # 20 at 5). Therefore, the defendants argue, Jones is estopped from asserting claims for liability based on her termination. *Id.* However, this argument relies on matters outside the pleadings, namely the Department of Industrial Relations Hearing and Appeals Division decision dated September 23, 2008. (Submitted as Exhibit B to Docs. # 16, 18, and 20). Because the Court cannot consider matters outside the pleadings on a 12(b)(6) motion to dismiss, the Court may not reach the merits of this argument. The defendants are not precluded from raising this issue at a latter date on a motion for summary judgment made pursuant to Rule 56. However, at this time, the motions are due to be denied with regard to defendants' estoppel argument.

8

### B.  *Jones's claims brought pursuant to 42 U.S.C. § 1983*

Section 1983 provides a remedy when person acting under color of state law

deprives a plaintiff of a right, privilege, or immunity secured by the Constitution, laws, or

treaties of the United States.  See, e.g., 42 U.S.C. § 1983;[4] *Graham v. Connor*, 490 U.S.

386, 393-94 (1989) ("Section 1983 is not itself a source of substantive rights, but merely

provides a method for vindicating federal rights elsewhere conferred.") (internal quotes

omitted); *Cummings v. DeKalb County*, 24 F.3d 1349, 1355 (11th Cir. 1994).

Jones brings several claims pursuant to § 1983 against Hamic, Minshew, Ward,

and Odom in their individual and official capacities; the Commission; and the Board.

These include allegations that (1) Hamic, Odom, the Commission, and the Board deprived

Jones of a property interest in violation of the substantive and procedural due process

protections of the Fourteenth Amendment; (2) Minshew deprived Jones of a liberty

interest in violation of her substantive and procedural due process protections of the

Fourteenth Amendment; (3) Ward, Hamic, the Commission, and the Board violated

Jones's First Amendment right to political association; (4) Ward maliciously prosecuted

---

[4]  Section 1983 provides in relevant part:
Every person who, under color of any statute, ordinance, regulation,
custom, or usage, of any State or Territory or the District of Columbia,
subjects, or causes to be subjected, any citizen of the United States or other
person within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall be
liable to the party injured in an action at law, suit in equity, or other proper
proceeding for redress.

Jones in violation of her Fourth and Fourteenth Amendment rights; and (5) Ward committed an abuse of process in violation of Jones's Fourth and Fourteenth Amendment rights.  All claims against individual defendants are brought against them in both their individual and official capacities.

### 1.  Sheriff Ward's immunity from suit brought pursuant to § 1983

Before addressing the merits of any of Jones's § 1983 claims, the Court will discuss Ward's argument that he is entitled to immunity against each of Jones's federal claims.  First, Ward argues that he is entitled to dismissal of those federal claims brought against him in his official capacity on the basis that he is entitled to Eleventh Amendment immunity and on the basis that he is not a person against whom a § 1983 claim may be brought.  Second, Ward argues that he is entitled to dismissal of federal claims brought against him in his individual capacity based on the doctrine of qualified immunity.  Each will be discussed in turn.

### a.  Ward is entitled to Eleventh Amendment immunity against official capacity claims

A suit against a state officer in his official capacity is effectively a suit against the state.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  To determine whether an individual is a state official covered by Eleventh Amendment immunity, courts must consider the law of the state.  *Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).  Under Alabama law, including provisions of the Alabama Constitution, a sheriff is an executive

10

officer of the state. *Parker v. Amerson*, 519 So. 2d 442, 442–43 (Ala. 1987). Because an Alabama sheriff is a state official, a suit against the sheriff is effectively a suit against the state of Alabama. Accordingly, the Eleventh Circuit has repeatedly held that Eleventh Amendment immunity bars § 1983 suits against an Alabama sheriff in his official capacity for money damages. *Dean v. Barber*, 951 F.2d 1210, 1215 n.5 (11th Cir. 1992); *Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir. 1989); *Parker v. Williams*, 862 F.2d 1471, 1476 (11th Cir. 1989).

Jones claims that she brings suit against Ward only for non-monetary damages, and therefore that Eleventh Amendment immunity does not bar her claims against him. (Doc. # 35 at 10). This argument is directly contradicted by explicit statements in Jones's complaint. In paragraph 132 of her complaint, Jones states that due to Ward's alleged violations of her First Amendment rights, "Plaintiff is entitled to nominal, compensatory, and punitive damages and attorneys' fees and costs." (Doc. # 1). In paragraph 142 of her complaint, Jones states that for Ward's alleged violations of her Fourth and Fourteenth Amendment rights against malicious prosecution, "she is entitled to all legal and equitable remedies available at Alabama common law, including nominal, compensatory, and punitive damages." *Id.* Jones uses the same language in paragraph 151 of her complaint relating to Ward's alleged abuse of process. *Id.*

For each of the three federal law claims brought against Ward in his official capacity, Jones seeks monetary relief. As explained above, those claims brought against

Ward in his official capacity for monetary damages are barred by the Eleventh Amendment, and therefore are due to be dismissed.[5]

### b. Ward is not a "person" for § 1983 purposes when sued in his official capacity

Ward also argues that as a state official, he is not considered a "person" for purposes of § 1983 when sued in his official capacity for money damages. The Court agrees. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 n.3 (11th Cir. 1990). For this reason as well, then, Jones's claims against Ward in his official capacity for monetary damages are due to be dismissed. Because Jones has adequately pled only monetary damages against Ward, there are no remaining § 1983 claims against him in his official capacity.

### c. Ward is entitled to qualified immunity for all § 1983 claims brought against him in his official capacity

Lastly, Ward contends that he is entitled to qualified immunity, and therefore to

---

[5] Jones does not explicitly request prospective injunctive relief for any of the claims, and it is difficult to imagine what prospective injunctive relief would even be applicable in this case. While Jones claims in her response to Ward's motion to dismiss that she does seek prospective injunctive relief, she does not explain what specific relief she seeks. Accordingly, Jones has not adequately pled a claim for prospective injunctive relief and all official capacity claims against Ward are due to be dismissed in their entirety. Even if Jones seeks reinstatement to her position, a form of prospective relief, she has pled no facts which would give rise to the conclusion that Ward had any control over her employment or that he could, if ordered to do so, reinstate her.

dismissal of all § 1983 claims brought against him in his individual capacity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). *Accord*, *Hope v. Pelzer*, 536 U.S. 730 (2002). Qualified immunity allows officials to carry out their duties "without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted); *Wood v. Kesler*, 323 F.3d 872 (11th Cir. 2003). Because this defense should be applied at the earliest possible stage of litigation, it is proper for a district court to rule on a claim of qualified immunity asserted in a motion to dismiss. *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th 2003). The Court should grant a motion to dismiss on qualified immunity grounds "if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right." *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1300 (11th Cir. 2007).

To be eligible for qualified immunity, the government officials must first show that they were acting within their discretionary authority. *Gonzalez*, 325 at 124. In this case, Jones does not dispute that Ward was acting within his discretionary authority when the alleged constitutional violations occurred.

13

Second, the Court must determine whether plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

However, if the alleged conduct violated constitutional rights, the next step of the inquiry is to determine whether the rights at issue were "clearly established." Law can be "clearly established" in three ways. First, the words of the relevant constitutional provision may itself be specific enough to clearly establish the applicable standard of conduct, even in the total absence of case law. *Vinyard*, 311 F.3d at 1350. Second, preexisting case law may serve to establish the boundaries of constitutionally improper conduct. *Id.* at 1351. Case law need not arise out of factually identical situations to clearly establish law for purposes of the qualified immunity analysis. *Id.* at 1351. In fact, broad legal principles established in case law may serve to clearly establish the law even for cases arising out of factually different situations. *Id.* Third, in the absence of case law with a broad holding sufficient to provide fair notice, individual cases may serve to clearly establish the law arising out of materially similar factual circumstances. *Id.* at 1351-52.

The Court will analyze each § 1983 individual capacity claim independently to determine (1) whether a constitutional violation occurred, assuming Jones's allegations

are true; and if necessary (2) determine whether the rights Jones claims were violated were "clearly established" at the time of the relevant conduct.

### i. Ward is entitled to qualified immunity on Jones's First Amendment right to political patronage claim

The Supreme Court's decisions in *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980) established that the First Amendment prohibits the government from discharging public employees "solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64 (1990). Political patronage is an improper basis for making several kinds of employment decisions, but Jones only alleges facts in her complaint giving rise to a claim based on politically motivated discharge. *See id.* (holding that promotion, transfer, recall, and hiring decisions may not be constitutionally based on party affiliation and support).

Jones alleges two facts to support her First Amendment claim against Ward—first that Ward assisted Hamic, who was campaigning for election as probate judge on a platform that included a promise to fire Jones, (Doc. # 1 ¶ 126), and second that Ward "aided the arrest and indictment of Jones before any audit of her payroll records was made." *Id.* at ¶ 129. This is simply not enough to support a finding that Ward violated clearly established federal law. While it is a violation of clearly established law to terminate an employee's employment based on political affiliation, Jones alleges no facts

to give rise to the conclusion that Ward had any control over her employment.  If Ward did not have the power to terminate her employment, then he could not violate her First Amendment rights by terminating her employment for political reasons.[6]

Jones does include legal conclusions in her complaint indicating that Ward, along with several other defendants, terminated her employment.  *Id.* at ¶ 125, 128, 130. However, *Twombly* requires the plaintiff to provide "more than labels and conclusions." 550 U.S. at 559.  In this case, the facts support only the conclusion that Hamic, as Jones's appointing authority, could terminate her employment.  *See id.* at ¶¶ 63–64.

Again, the only facts that Jones pleads with regards to Ward do not constitute a violation of clearly established First Amendment law.  Jones alleges that Ward helped Hamic campaign on a platform that included a promise to fire Jones.  *Id.* at ¶ 62. However, Jones has not provided a single case to this Court indicating that helping a

---

[6] Alabama Act 85-587 § 17 provides that "any employee may be dismissed, suspended without pay, or demoted by his appointing authority. . ."  As Jones alleges, Hamic was her appointing authority during the time that she was indicted and terminated. (Doc. # 1 ¶ 63).  Jones also alleges that Hamic is the one who actually terminated her employment.  *Id.* at ¶ 64.  Therefore, Jones's complaint gives rise to the inference that only Hamic had the power to terminate her employment.  Ward argues that he had no control over Jones's employment, and therefore cannot be held liable for any damages resulting from her termination.  (Doc. # 21 at 8).  However, his argument is based on the "necessary and logical corollary" that the county has no control over the sheriff's employees, who are state officials.  In other words, Ward argues that since the county has no power over the sheriff, the sheriff likewise has no power over county employees. Without agreeing with this logic, the Court finds that Jones has alleged no facts or presented no law which would support the conclusion that Ward had any control over Jones's employment.

candidate who happens to be running on such a campaign promise is a violation of the First Amendment right to political association. As such, Ward is entitled to qualified immunity on Jones's First Amendment claims. Jones also alleges that Ward arrested her before an audit was performed on her payroll records. However, this goes to the existence of probable cause, and does not establish a First Amendment violation.

### *ii. Ward is entitled to qualified immunity on Jones's claim for malicious prosecution in violation of the Fourth and Fourteenth Amendments*

Jones brings her malicious prosecution claim pursuant to both the Fourth and Fourteenth Amendments. (Doc. # 1 at 21). As an initial matter, the Court must dismiss her claim to the extent that it is brought pursuant to the Fourteenth Amendment's substantive due process provision. If an Amendment provides a textual basis for constitutional protection against the conduct complained of, that specific Amendment and not the Fourteenth Amendment's substantive due process protections must form the basis of the claim. *Albright v. Oliver*, 510 U.S. 266, 273–74 (1994). The Eleventh Circuit has held that the tort of malicious prosecution is essentially based in protection against unreasonable seizure, and therefore the only remedy for malicious prosecution is under the Fourth Amendment as incorporated against the states. *Uboh v. Reno*, 141 F.3d 1000, 1002–03 n.4 (11th Cir. 1998); *Jordan v. Mosley*, 298 Fed. App'x 803, 805–06 (11th Cir. 2008).

Next, the Court will determine whether Jones's allegations regarding malicious prosecution, if true, establish a constitutional violation. *See Hope*, 536 U.S. at 736. To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures. *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). The Eleventh Circuit has determined that under the relevant common law, the elements of a malicious prosecution claim are (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused. *Id.* at 882.

A finding of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009). Accordingly, probable cause does not require "overwhelmingly convincing evidence" of guilt. *Id.* Even in the absence of probable cause, an officer like Ward is entitled to qualified immunity if arguable probable cause existed. *Id.* "Arguable probable exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Id.*

Ward argues that he is entitled to qualified immunity as to the malicious prosecution claim because Jones cannot establish a lack of probable cause to arrest and/or

indict her.  The Court agrees.  Jones alleges that at the March 10, 2008 Commissioners'

meeting, Ward was in possession of her time sheets and was in the midst of a criminal

investigation into whether she had misrepresented overtime pay on those time sheets.

(Doc. # 1 ¶ 22-23).  Additionally, Jones admits that her time sheets themselves revealed

that she had been paid $288.16 because of "*errors on her time sheets*."  The criminal

charge Ward brought against Jones was "using her position as County Administrator for

personal gain" and involved misreporting overtime on her time sheets.  The evidence of

this alleged crime would necessarily be located in Jones's time sheets, and Jones's

complaint show that Ward was in possession of those time sheets before he arrested her.

 This evidence is sufficient to find at the very least that arguable probable cause

existed.  It is undisputed that Jones's time sheets demonstrated that overpayments had

been made, whether criminal or not.  Accordingly, a reasonable officer in possession of

those time sheets could have believed that probable cause existed to arrest Jones.  It is

important to note that the probable cause determination is an objective one.  *See Rankin v.*

*Evans*, 133 F.3d 1425, 1433–34 (11th Cir. 1998).  Therefore, Jones's allegation that Ward

harbored a personal vendetta against her is irrelevant to the probable cause inquiry.

Accordingly, Ward is entitled to qualified immunity on Jones's malicious prosecution

claim and to dismissal of this claim against him.

   ***iii.  Ward is entitled to qualified immunity on Jones's claim***

   ***of abuse of process in violation of the Fourth and***

### *Fourteenth Amendments*

Because abuse of process has its basis in the protections provided by the Fourth Amendment, Jones's claim must be dismissed to the extent that it is brought pursuant to the Fourteenth Amendment's substantive due process provision. *See infra*; *Albright*, 510 U.S. at 273–74 (holding that if an Amendment provides a textual basis for constitutional protection against the conduct complained of, that specific Amendment and not the Fourteenth Amendment's substantive due process protections must form the basis of the claim).

Ward argues that the Eleventh Circuit has not found that the tort of abuse of process is cognizable under § 1983. (Doc. # 21 at 20.) This Court agrees that at the very least, it is unclear whether the Eleventh Circuit has recognized this tort. *See Paullin v. City of Loxley, Ala*, 171 Fed. App'x 773, 778 (11th Cir. 2006) (accepting the plaintiff's argument that his abuse of process claim should be categorized as a malicious prosecution claim, and analyzing it accordingly); *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1291–92 (11th Cir. 2001) (discussing abuse of process as an Alabama state law tort, and not as a tort cognizable under § 1983); *Artubel v. Colonial Bank Grp., Inc.*, No. 8:08-cv-179-T-23MAP, 2008 WL 3411785, at *16 (M.D. Fla. Aug. 8, 2008) (analyzing the abuse of process claim solely under Florida law, without first looking to see whether abuse of process was a tort cognizable under § 1983); *Gray v. Burke*, No. 5:08-cv-279, 2009 WL 500854, at *5 (M.D. Ga. Feb. 27, 2009) (stating that the tort of abuse of process was "not

clearly defined"); *St .Germain v. Isenhower*, 98 F. Supp. 2d 1366, 1370 (S.D. Fla. 2000) (noting that the Eleventh Circuit has recognized an action for malicious prosecution pursuant to § 1983, and that "[o]ther federal courts have recognized a federal constitutional claim for the related tort of abuse of process").  In her response to Ward's motion to dismiss, Jones has not cited a single case to support her conclusion that "her claim of abuse of process against defendant Ward may remain."  (Doc. # 35 at 15).  In fact, Jones seems not to address Ward's claim for qualified immunity at all.

As Jones has shown neither that her allegations establish a violation of constitutional rights nor that Ward violated a clearly established constitutional right, Ward is entitled to qualified immunity.  Accordingly, his motion to dismiss Jones's claim for abuse of process brought against him in his individual capacity is due to be granted.

### 2. *Substantive due process claims brought pursuant to § 1983 against Hamic, Odom, Minshew, the Commission, and the Board*

In this case, Jones alleges that the Commission, the Board, Hamic and Odom deprived her of a property interest in her continued employment with Geneva County, thereby violating her substantive due process rights.  (Doc. # 1 ¶ 114, 120).  She also alleges that Minshew deprived her of a liberty right in her reputation when he allowed a public discussion about her character to take place at a Commissioners' meeting.  *Id.* ¶ 121.

The substantive component of the Due Process Clause protects rights that are

fundamental and which arise out of the Constitution—those enumerated in the Bill of Rights, and some unenumerated rights such as privacy. *McKinney v. Pate*, 20 F.3d 1550, 1556  (11th Cir. 1994) (holding that in non-legislative cases, only procedural due process rights are available to pretextually terminated employee).  Rights that are created by state law, such as employment rights, are therefore not subject to substantive due process protection.[7]  *Id.*; *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005).  State law property rights in employment, like the one Jones asserts in this case, "constitutionally may be rescinded so long as the elements of procedural—and not substantive—due process are observed."  *McKinney*, 20 F.3d at 1556.  Therefore, Jones can only state a procedural due process claim against the Commission, the Board, Odom, and Hamic if she can state a due process claim at all.  For that reason, Jones's substantive due process claims against these defendants are due to be dismissed.[8]

   Additionally, while the Eleventh Circuit has recognized *procedural* due process

_____

   [7] Substantive due process rights do apply when state-created rights are infringed by legislative act.  *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005).  When an individual's rights are infringed by legislative act, due process protects him from arbitrary and irrational action by the government.  *Id.*  Jones does not—and likely cannot—argue that this exception applies in her case.  Her termination is the prime example of an executive act, as that term is used in the substantive due process context.  *See McKinney*, 20 F.3d at 1557 n.7.

   [8] Jones seems to argue that because she was considered a permanent employee with Geneva County, her property interest in her employment is elevated to a fundamental right.  The case Jones cites in support of this argument does not support her proposition, and this Court cannot see how her permanent employment status with the County would change the binding case law of this Circuit.

claims based on damage to reputation coupled with employment termination, Jones

presents no case law to support the proposition that the same facts should give rise to a

*substantive* due process claim.  *See Cotton v. Jackson*, 216 F.3d 1328, 1330–31 (11th Cir.

2000); *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001) (setting

out what the plaintiff must prove before he "is entitled to invoke the procedural

protections of the Due Process Clause" in the context of reputational harm accompanied

with employment termination).  Additionally, there is no argument that Jones's

reputational interest is "so fundamental that our democratic society and its inherent

freedoms would be lost if that right were to be violated."  *Moates v. Strength*, 57 F. Supp.

2d 1305, 1309 (M.D. Ala. 1999) (Albritton, C.J.).  Accordingly, Jones's substantive due

process claim against Minshew is also due to be dismissed.

### 3.   *Procedural due process claims brought pursuant to § 1983 against Hamic, Odom, Minshew, the Commission, and the Board*

In order to establish a procedural due process claim, the plaintiff must show "there

exists a liberty or property interest which has been interfered with by the State" and that

"the procedures attendant upon that deprivation" were not constitutionally sufficient.  *Ky.*

*Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  In this case, Jones has alleged

that Hamic, Odom, the Commission, and the Board deprived her of the property interests

she had in maintaining her employment when (1) the Board and Commission reclassified

her employment as exempt; (2) Odom failed to inform Jones that another position was

23

available in Geneva County; and (3) Hamic terminated her employment.  (Doc. # 1 ¶ 114, 120, 121).  Jones also alleges that Minshew deprived her of a liberty interest in her continued employment when he discussed her character openly at two public Commissioners' meetings—once at the March 10, 2008 meeting at which Jones's status was changed to exempt, and once at the August 24, 2009 meeting during which Minshew stated "I don't want her back down here."  (Doc. # 34 at 14; Doc. # 1 ¶¶ 30, 99).  Jones's claims for deprivation of property and liberty interests will be discussed independently.

### a.  Alleged deprivation of property interest

Hamic, Odom, the Commission, and the Board argue that Jones cannot state a claim for procedural due process because Alabama law provides an adequate post-deprivation remedy by which Jones could have sought review of the Defendants' alleged procedural violations.  However, the Defendants' motions do not point out a *single* example to support their assertion.[9]  Of the three cases that the Defendants cite to support their proposition that Alabama provides adequate post-deprivation remedies, one does not even apply Alabama law.  *See Cotton*, 216 F.3d at 1328 (analyzing whether Georgia's

---

[9]The Geneva County Civil Service Act provides that an employee wishing to protest a disciplinary action "shall file a protest in writing with the board and with his appointing authority" and "request a hearing with the board."  Ala. Act. No. 85-587.  The Act also provides that "decisions of the board may be enforced by mandamus, injunction, or other appropriate proceedings."  *Id.*  However, the Defendants do not point to any of these remedies.  Instead, they merely state the conclusion that "the State of Alabama provides an adequate remedy for any deprivations of due process."  (Doc. # 19 at 13; Doc. # 17 at 7).

mandamus procedure provides and adequate post-deprivation remedy).  Because the

Hamic, Odom, the Commission, and the Board have not shown this Court that an

adequate state law remedy existed for any of the alleged deprivations of liberty and

property, their motions are due to be denied as to Jones's procedural due process claims.

### b.  Alleged deprivation of liberty interest

Jones claims that she suffered reputation damage when Minshew made statements

regarding her character.  Generally, reputational damage is not actionable under § 1983.

*Cotton*, 216 F.3d at 1330.  However, when the reputational damage is sustained in

connection with termination of employment, it may give rise to a procedural due process

claim for deprivation of liberty.  *Id.*  In order to succeed on such a claim, a plaintiff must

demonstrate that (1) a false statement, (2) of a stigmatizing nature, (3) attending a

governmental employee's discharge, (4) was made public, (5) by the governmental

employer, (6) without a meaningful opportunity for an employee name-clearing hearing.

*Id.*

Minshew argues first that, as a legislator, he is protected from liability based on

actions taken during the course of performing legislative duties.  *Id.*  Local legislators are

absolutely immune from suit brought based on their legislative activities.  *Bogan v. Scott-*

*Harris*, 523 U.S. 44, 49–54 (1998) ("Absolute legislative immunity attaches to all actions

taken 'in the sphere of legitimate legislative activity.'").  When determining whether or

not an act is legislative in nature, a court is not to consider the subjective intent of the

legislator in performing the act. *Id.* at 54. Instead, it is the "nature of the act which determines whether legislative immunity shields the individual from suit." *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1060 (11th Cir. 1992). Not all acts are considered legislative—"only those acts which are 'necessary to preserve the integrity of the legislative process' are protected." *Woods v. Gamel*, 132 F.3d 1417, 1420 (11th Cir. 1998) (quoting *Yeldell*, 956 F.2d at 1062).

In this case, any statements made during the public Commissioners' meeting on March 10, 2008 are protected legislative acts. Statements made on the floor of the legislature are the foundation of legislative immunity. *See Yeldell*, 956 F.2d at 1061–62 (finding that the foundation of legislative immunity for local officials stems from the Speech and Debate Clause of the federal Constitution). Jones has not provided the Court any reason to find that Minshew's statements fell outside of the scope of protected activity. Instead, she merely reiterates that not all communications made by a legislator are protected. (Doc. # 34 at 15). While this may be true, the Court finds that Minshew's statements, made during the course of the March 10, 2008 Commissioners' meeting, are protected and therefore Minshew is immune from liability based on these statements.

Minshew's statement "I don't want her back down here," made during the August 24, 2009 Commissioners' meeting, may have been personal in nature and part of a private conversation between Minshew and Commissioner Finch. If this is the case, those statements may not have been legislative in nature, and therefore not protected. However,

26

the Court finds that Jones could still not succeed on her procedural due process claim based on this specific statement even if Minshew is not immune from suit.  As stated above, the first element of the procedural due process claim is that the defendant made a false statement.  *Cotton*, 216 F.3d at 1330.  Jones has not alleged that Minshew's statement was false in any way.  Accordingly, she cannot state a claim for relief on the basis of either Minshew's March 10, 2008 or August 24, 2009 statements and her claims against him are due to be dismissed.  As this is the only claim pending against Minshew, he is entitled to be dismissed as a party to this lawsuit.

### 4.  *First Amendment claim brought pursuant to § 1983 against Hamic, the Commission, and the Board.*

The third count of Jones's complaint alleges that Hamic, the Commission, and the Board violated her First Amendment right of political association.[10]  She claims that she was fired based on her political support for Hamic's opponent in his election for probate judge.  (Doc. # 1 ¶ 125).  Jones does not indicate that she brings her First Amendment claim through § 1983, but the Court construes her claim as though it were brought pursuant to the statute.

"Absent some reasonably appropriate requirement, the government may not make public employment subject to the express condition of political beliefs." *Cutcliffe v.*

---

[10]  This claim was also brought against Ward.  However, as explained above, Ward is entitled to both Eleventh Amendment and qualified immunity, and therefore Jones's First Amendment claim against Ward is due to be dismissed.

*Cochran*, 117 F.3d 1353, 1355 (11th Cir. 1997).  When determining whether or not political affiliation is a reasonably appropriate requirement for continued employment, courts should look to "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 455 U.S. at 518.

The Commission, the Board, and Hamic do not claim that party affiliation was an appropriate requirement for Jones's employment.  Instead they argue (1) that Jones is estopped from claiming she was terminated on any basis other than her own misconduct and (2) that the individuals who allegedly conspired to terminate her employment were both republicans and democrats.  Both of these arguments rely on information beyond the pleadings, and therefore are inappropriate for the Court's review at this time.

Jones has not, however, pled any facts with regard to what the Board and the Commission actually did to infringe upon her First Amendment rights to political association.  Jones's allegations focus solely on the actions taken by Hamic and Ward to terminate her employment and allegedly retaliate against her.  Even if Jones's support for Hamic's political opponent was an affiliation that the Board and the Commission took exception to, Jones has not explained what action the Board and/or the Commission took based on that affiliation.  Accordingly, Jones has not stated a claim for relief against either the Board or the Commission for violations of her First Amendment rights, and her claim against those defendants is due to be dismissed.

28

The same cannot be said regarding Jones's claim against Hamic.  She alleges both that she supported his opponent and that he terminated her employment.  These facts are sufficient at this point in the litigation to set forth a claim of violation of Jones's right to political association.  Therefore, her claim against Hamic must remain.

### C.  Jones's Fair Labor Standards Act claim brought against the Commission and the Board.

Jones brings suit for two different violations of the Fair Labor Standards Act ("FLSA"), specifically § 216(b), which provides that employers may be liable for unpaid overtime, and § 215(a)(3), which prohibits employers from retaliating against employees who complain about violations of the FLSA.[11]  (Doc. # 1 at 15).  The defendants move to dismiss Jones's FLSA claims for two reasons.  First, the Board and the Commission argue that because Jones does not allege that she suffered damages in the form of unpaid overtime she cannot state a claim under § 216(b).  Second, the Board argues that the Board is not Jones's employer, and therefore cannot be the target of Jones's allegations regarding the FLSA.  These will be discussed independently.

### 1.  Jones fails to state a claim under § 216(b)

Section 216(b) of the FLSA provides that any employer who violates the

---

[11]  Jones specifically brings Count 1 against the County Commission and the Personnel Board.  (Doc. # 1 ¶ 104).  However, at other points in her complaint, she states that Judge Hamic's violations of the FLSA caused her harm.  *Id.* at ¶ 111.  The Court will resolve the ambiguity in the Complaint in favor of the explicit statements Jones makes about which defendant each Count is brought against.  Therefore the Court assumes that the FLSA claims were not brought against Hamic.

provisions of § 207 by failing to pay overtime compensation "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation." 29 U.S.C. § 216(b). "An FLSA-plaintiff suing for unpaid overtime or minimum wages has the burden of proving that he or she performed the work for which he or she was allegedly not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946) (superseded by statute on other grounds); *Arroyave v. Rossi*, 296 Fed. App'x 835, 835 (11th Cir. 2008) ("The employee bears the burden of proving that he worked overtime without compensation").

This burden should not be a heavy one, as the plaintiff usually must rely on the defendant employer's records to establish overtime work. *See Arroyave*, 269 Fed. App'x at 836. Here, however, Jones has not alleged any facts in her complaint which would indicate that she suffered any unpaid overtime between March 12, 2008 (the day she was allegedly misclassified as an exempt employee) and March 28, 2008, the day she was dismissed from her position. While she lists "payment of lost overtime wages" as one of the remedies she seeks against the defendants, nowhere does she allege that she actually worked overtime for which she was not paid. The only facts available to the Court indicate that Jones was actually *overpaid* $1000.78 during her employment with the county. (Doc. # 1 ¶ 48).

Additionally, Jones does not sufficiently address this issue in her response to the Defendants' motions. Jones seems to argue that the Board and the Commission changed

her status to take away her right to file a grievance regarding any adverse employment action taken against her.  (Doc. # 33 at 15).  However, she provides no case law which would support her theory that the deprivation of grievance rights because of a misclassification to exempt status could support a claim pursuant to § 216(b) even in the absence of unpaid, earned overtime compensation. For this reason, Jones fails to state a claim under § 216(b) of the FLSA against either the Board or the Commission.

### 2.   The joint employer status of the Board and the Commission

The Board also argues that it is not Jones's employer, and therefore that the FLSA claims against it must be dismissed.  The FLSA's definition of "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency."  29 U.S.C. § 203(d).  A single individual can "stand in the relation of an employee to two or more employers at the same time."  29 C.F.R. § 791.2.  A party can qualify as a joint employer if "as a matter of economic reality, the individual is dependent on the entity."  *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996).  Whether or not an entity qualifies as a joint employer depends on all the facts of the particular case.  29 C.F.R. 791.2.  However, the court should consider factors such as "control, supervision, right to hire and fire, ownership of work facilities, investment, and pay-roll decisions" when determining joint employer status.  *Cornell v. CF Ctr., LLC*, No. 10-12653, 2011 WL 196947, at *2 (11th Cir. Jan. 21, 2011) (citing *Antenor*, 88 F.3d at 932–97).

31

Whether or not the Board and the Commission are joint employers is a legal determination to be made by the Court. *Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir. 1986). However, because the determination depends on all the facts of the particular case, it is one that can be better made on summary judgment. At this point, the Court does not have enough information before it to determine whether or not the Board and Commission jointly employed Jones. The Complaint alleges that the Board was instrumental (along with the Commission) in changing Jones's employment status from classified to exempt. This demonstrates that the Board had at least some control over Jones's employment. Because she has alleged some facts to demonstrate that the Board jointly employed her, Jones has established a claim for relief against the Board that is plausible on its face.

As this is the only remaining argument that pertains to Jones's § 215(a)(3) claim, that portion of her FLSA claim is due to remain.

### D. Jones's state law claim for defamation against Ward

In addition to her federal law claims, Jones also brings a state law claim for defamation against Ward. Ward argues that as an executive officer of the State of Alabama, he is entitled to absolute immunity from suit brought pursuant to state law. This Court agrees. The Alabama Constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. of 1901, art. I, § 14. The Alabama Supreme Court has held that sheriffs are executive officers of the State

of Alabama, and accordingly are entitled to the immunity provided in Article I, § 14. *Parker*, 519 So. 2d at 443.  This immunity applies to suits brought based on the execution of the duties of office, but does not bar actions brought "(1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act." *Parker*, 519 So. 2d at 443.

First, Jones argues that Ward was not executing the duties of his office when he made the allegedly defamatory statements, and therefore that he is not entitled to state law immunity.  She does little, however, to explain how his statements were made outside the scope of his employment.  The statements that Ward made were in regards to pending criminal investigations in Geneva County, a topic that is most certainly within the duties of the office of sheriff.  *See* Ala. Code § 36-22-3(4) (1975) ("It shall be the duty of sheriffs in their respective counties, by themselves or deputies, to ferret out crime. . .").

Second, Jones seems to argue that an exception to absolute immunity as set out in *Parker* applies here because she requests injunctive relief against Ward.  Jones states that "Plaintiff's Complaint brings properly pled claims against defendant Ward in his official capacity under this exception since she seeks prospective injunctive relief to redress the unconstitutionality of defendant Ward's actions under the First Amendment right of political association."  (Doc. # 35 at 10).  This argument makes little sense.  First, Ward's

33

immunity based on Alabama law is only relevant for claims brought against him based on state law.  The only claim Jones brings against Ward pursuant to state law is her claim for defamation.  Obviously, the First Amendment claim she references in her argument is based on federal law, to which state law immunity doctrines do not apply.  Second, Jones clearly seeks monetary relief—her complaint states that the damage she incurred includes "humiliation, embarrassment, loss of reputation, mental anguish, loss of enjoyment of life, and loss of employment opportunities, denial of wages, compensation, and other benefits and conditions of employment."  (Doc. # 1 ¶ 134).  Nowhere does she even mention injunctive relief as it relates to her claim of defamation.  At most, she requests a declaratory judgment stating that Ward defamed her.  Id. ¶ 157.  However, Jones does not fall within the declaratory judgment exception in *Parker*, either, as her request for a declaratory judgment is not brought for "construction of a statute."  *Parker*, 519 So. 2d at 443.

Ward is entitled to absolute immunity against Jones's claim for defamation, and her defamation claim against him is due to be dismissed.  As explained above, he is also entitled to immunity from suit based on Jones's federal law claims as well.  Accordingly, Ward is entitled to be dismissed as a party to this lawsuit.

### G.  Jones's claim arising under the Geneva County Civil Service Act brought against the Commission and the Board

In order to establish that Ala. Act. No. 85-587 creates a private right of action,

Jones must "show clear evidence of a legislative intent to impose civil liability for a violation of the statute." *Am. Auto. Ins. Co. v. McDonald*, 812 So. 2d 309, 311 (Ala. 2001).  Jones argues that because the Act creates rights for employees with "permanent status," the Act therefore implies a private right of action to redress denial of those rights. (Doc. # 33 at 21).  This Court disagrees.  The Act gives employees with permanent status the right to protest disciplinary actions taken against them and creates a procedure for doing so through the Personnel Board.  Ala. Act. No. 85-587 § 18.  The Act also gives employees the right to appeal the Personnel Board's decision to the Circuit Court for Geneva County.  *Id.* at § 19.  However, the Act mentions nothing about creating a private right of action to seek damages for violations of the Act's requirements.  Jones has not pointed to clear evidence that the legislature intended to create such a right of action, and therefore this Court declines to recognize one.  Therefore, Count VII of Jones's Complaint is due to be dismissed.

## VI.  CONCLUSION

In accordance with the terms of this opinion, it is hereby ORDERED that:

(1) All of Jones's claims against Defendant Ward are DISMISSED with prejudice in their entirety.  The Clerk of Court is DIRECTED to remove him as a party to this lawsuit.

(2) Jones's claim against Commissioner Minshew is DISMISSED with prejudice in its entirety.  The Clerk of Court is DIRECTED to remove him as a party to this lawsuit.

(3) Jones's claims for violation of her substantive due process rights against Hamic, the Commission, the Board, and Odom are DISMISSED with

35

prejudice.

(4) Jones's claim for violations of the Geneva County Civil Service Act against the Commission and the Board is DISMISSED with prejudice.

(5) Jones's claims for violation of § 216(b) of the Fair Labor Standards Act against the Board and the Commission are DISMISSED without prejudice.

(6) Jones's claims for First Amendment violations against the Commission and the Board are DISMISSED without prejudice.

(7) Jones's claims for violations of § 215(a)(3) of the Fair Labor Standards Act against the Commission and the Board; the procedural due process claims against Hamic, the Commission, Odom, and the Board; and the First Amendment claim against Judge Hamic may remain.

Done this the 30th day of March, 2011.

                         /s/ Mark E. Fuller
                      CHIEF UNITED STATES DISTRICT JUDGE